UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ULISES CARNERO and LEILSA CALDERON,
Individually and on behalf of all others similarly
situated,

                         Plaintiffs,

      -against-

BAGEL MENTCH, INC. and DAVID WEISS, as an
individual,

                        Defendants.
-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

21-CV-0781 (FB) (JMW)

**James Patrick Peter O'Donnell**
**Roman M. Avshalumov**
80-02 Kew Gardens Road
Suite 601
Kew Gardens, NY 11415
*For Plaintiffs*

**Matthew A Brown**
**Robert F. Milman**
Milman Labuda Law Group PLLC
3000 Marcus Avenue
Suite 3W8
New Hyde Park, NY 11042
*For Defendants*

**WICKS,** Magistrate Judge:

                              I.        **BACKGROUND**

      This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"), arising out of alleged wage violations that occurred from 2001 until approximately May/June 2020 while Plaintiffs were employed at Defendants' bagel shop. (DE 1; DE 19.) Plaintiffs are seeking damages for the relevant statutory period from February 2015. (*Id.*) Plaintiffs claim that Defendants violated the FLSA and NYLL by failing to compensate them for overtime and failing to provide wage and notice statements. (*Id.*) Defendants flatly denied each of the allegations.

1

(DE 15.) After two mediations through the EDNY mediation program, the parties ultimately achieved a settlement. (Electronic Order dated Apr. 28, 2021; Electronic Order dated July 20, 2021.) The parties now move (DE 19) in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of the parties' settlement agreement.[1] The Honorable Frederic Block referred the parties' motion to the undersigned to issue a report and recommendation. (Electronic Order dated Oct. 20, 2021.) For the reasons that follow, the undersigned respectfully recommends that the motion for settlement approval be GRANTED.

## II. STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291

---

[1] Although Plaintiffs submitted the present motion, the Court construes the motion as a joint application of both parties. (DE 19).

(ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.¸* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

Factors weighing *against* settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a


*reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

It is against this backdrop, that the undersigned reviewed the proposed settlement.

### III.   DISCUSSION

After two mediation sessions, the parties achieved a proposed settlement agreement less than one year after this action was commenced. Accordingly, the parties filed and executed their proposed settlement agreement. (DE 1; DE 19.) The parties agreed that all claims in this suit would be dismissed with prejudice against Defendants and if the settlement is approved, Defendants would pay in exchange for dismissal of this suit, $50,000 to compensate Plaintiffs. (DE 19.) Plaintiffs' counsel would receive $17,650, one-third of the settlement, which includes all costs and expenses incurred by Plaintiffs to date. (*Id.*) For the reasons set forth below, the Court finds that the terms of the settlement are fair, reasonable and pass muster under *Cheeks*.

***Reasonableness of the Settlement***

Based on the parties' submissions – the parties' request of settlement approval (DE 19), the executed settlement agreement (*Id.*), an executed confession of judgment (DE 19-1), Plaintiffs' counsel's timesheets and attorneys' experience/qualifications (DE 20; DE 20-1) – the Court finds that application of the *Wolinksy* Factors favor approval.

*First*, the settlement agreement provides for a total payment of $50,000, approximately two-thirds of which will be paid to Plaintiffs as compensation for the alleged unpaid overtime wages and liquidated damages. (DE 19.) The $50,000 is set to be distributed using a payment schedule as set forth in the settlement agreement. (DE 19.) Plaintiff Carnero alleges that from February 2015 through May or June 2020, he worked approximately 17 hours of overtime per week which he was not properly compensated for. (*Id.*; DE 1.) Plaintiff Calderon alleges that from February 2015 through approximately December 2018, she worked approximately 14 hours of overtime per week which she was not properly compensated for. (*Id.*) In total, Plaintiffs allege approximately $175,000 in unpaid overtime wages. (*Id.*) Plaintiffs

also allege that Defendants failed to provide proper wage statements. (*Id.*) Plaintiffs are confident that they would succeed on the merits of this case, but also recognize the potential weaknesses of their case, including factual disputes as to the dates of each Plaintiff's employment and their alleged number of hours worked per week. (DE 19.) Further, Defendants assert that Plaintiff Carnero was exempt from overtime pay under the FLSA and NYLL because he was a manager, an argument which is allegedly supported by Carnero's deposition testimony from a prior matter. (*Id.*) Defense counsel also provided documents to Plaintiffs' counsel under confidential cover concerning Defendants' financial hardships, which Plaintiffs have acknowledged may prevent them from fully recovering on a judgment if they succeeded at trial. (*Id.*) Here, based on the affirmative defenses Defendants assert and Defendants' financial hardships, the Court finds that the proposed agreement of $50,000 provides due compensation for the alleged unpaid over time wages owed to Plaintiffs.[2]

*Second*, in light of the early stage at which this matter has reached a proposed settlement, the Court finds that parties will undoubtedly avoid extensive litigation costs by avoiding further discovery, document drafting, researching, and engaging in further communications. Thus, settlement allows the parties to avoid the inevitable burdens and expenses in preparing the parties' claims and defenses.

*Third*, there is a *bona fide* dispute between the parties, and settlement is a means of avoiding significant litigation risks for both. There exist -- and indeed the parties acknowledge -- that genuine issues of fact exist over the number of hours Plaintiffs worked, Plaintiff Carnero's employee/exemption status, the wages paid to Plaintiffs, and the dates of Plaintiffs' employment. (DE 19.) A trier of fact could very well conclude Defendants' defensive arguments persuasive, and thus Plaintiffs' potential recovery could be substantially impacted. Moreover, even if Plaintiffs were successful at trial, Defendants' financial status may prevent the possible full recovery from a judgment, which is another

---

[2] The Court notes that the parties also submitted a Confession of Judgment executed by Defendants (DE 19). As Courts in this Circuit have held, the *Cheeks* review process "is to ensure that the agreement is fair and reasonable to the *plaintiff* . . . any potential unfairness to *defendants* inherent in the affidavits of confession of judgment is not a barrier to judicial approval of the settlement under *Cheeks* and its progeny."

5

significant risk. Settlement, therefore, is an effective means to avoid the risks and costs to both parties in continuing to litigate this matter through trial and ensuing appeal.

*Fourth*, the Court finds that the parties have engaged in arms-length bargaining to achieve the settlement agreement, as evidenced by attending two EDNY mediations with an independent neutral.[3] (Electronic Order dated Apr. 13, 2021; Electronic Order dated July 20, 2021.) As a result of their expeditious and continuous efforts at mediation, the parties reached an agreement and executed a proposed settlement agreement on October 18, 2021. (DE 19.)

*Fifth*, the parties, as represented by counsel, negotiated in good faith, and agreed upon the terms within the settlement agreement. (DE 19.) The parties represent, and indeed the ultimate number reached reflects, that they each made compromises on their positions in order to achieve a fair and reasonable settlement. (*Id.*) Accordingly, there is no indication that the settlement is a product of fraud, coercion or collusion.

Here, the *Wolinsky* Factors that weigh against settlement do not compel a rejection of the proposed settlement in this case. First, although the record is silent as to whether there are similarly situated workers employed by Defendants who also face hour and wage discrepancies, it is likely that if there were such individuals, they would have joined this action with Plaintiffs especially considering Plaintiffs filed the action as a proposed collective action. The Court notes that Plaintiffs did not move for conditional certification of this matter, and the agreement pertains to terms between the named Plaintiffs and Defendants only (DE 19), so any other employee or former employee of Defendants will not be prejudiced from pursuing a future claim against Defendants. Second, given the expenses, resources, and hours spent during the litigation process, it is likely that Defendants will be deterred from violating the FLSA and NYLL – as alleged by Plaintiffs – in the future. It is also unlikely that Plaintiffs' circumstances would recur as they are no longer employed by Defendants, and regardless, the settlement agreement's Limited Release provision is limited to claims up to and as of the date of the execution of the

---

[3] The Court gratefully acknowledges the work of the selected Mediator from the EDNY panel, Giulio Zanolla.

6

agreement which Plaintiffs now have or have ever had. (DE 19.) Although an argument could be made that maturation of this record could lead to further legal developments in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement.

Last, the proposed settlement agreement does not contain any of the problematic provisions that are flagged in *Cheeks*. First, the agreement does *not* contain a confidentiality provision. (DE 19). Second, although the agreement does contain a release (*Id.*), the release is a limited not general one, and is not "overbroad." The release is aimed at preventing repetitive future actions arising out of claims which have already been asserted in this action, and existing at any time prior to and through the date of the execution of the release. Further, as discussed more fully below, Plaintiffs' counsel has provided documentation supporting the proposed attorneys' fees, which the Court finds are fair and reasonable. (DE 20; DE 20-1.)

***Attorneys' Fees*** [4]

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF),

---

[4] Upon an initial review of the motion, the Court requested Plaintiffs' counsel to provide the Court with contemporaneous billing records documenting the hours expended on this case and the nature of the work performed, in order to perform a proper *Cheeks* review. (Electronic Order dated Oct. 22, 2021). The parties thereafter filed their supplemental submission on November 3, 2021. (DE 20; DE 20-1.)

2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Here, Plaintiffs' counsel requested $17,650 out of the $50,000 settlement[5] and submitted timesheets conveying the attorneys' billing rates, description of services and the hours worked. (DE 20-1.) The $17,650, which constitutes one-third of the settlement, includes the attorneys' fees and costs incurred during the litigation: $1,475 (filing fees, mediation fess, and costs of service). (*Id.*) Defendants do not take a position regarding Plaintiffs' application for attorneys' fees and costs. Thus, based on this Circuit's reliance on the one-third contingency fee standard, Plaintiffs' counsel's request is reasonable under the percentage method.

"[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted). In utilizing the lodestar approach, courts multiply the amount of hours spent on a case by an attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

---

[5] The Court notes that there appears to be a typographical or simple miscalculation error in the "requested Attorneys' Fees and Expenses" section of the motion (DE 19.) "Total payable to Plaintiffs: $22,350.00 ($50,000.00 - $17,650.00)" should state "$32,350.00 ($50,000.00 - $17,650.00)."

8

Here, Plaintiff asserts that Roman Avshalumov, a senior managing attorney at Helen F. Dalton & Associates, P.C., billed 18.1 hours working on this case at a rate of $425.00 per hour.[6] (DE 20-1.) Additionally, Mr. James O'Donnell, an attorney at Helen F. Dalton & Associates, P.C., billed 22 hours at a rate of $250.00 per hour. (*Id.*) The attorneys' fees also account for 19.7 hours of paralegal work billed at $75.00 per hour (consisting of bilingual paralegal services). (*Id.*) The sum of Plaintiffs' counsel's lodestar calculation therefore comes to $14,670. The Court finds the number of hours exerted on this matter to be reasonable, considering the length of discovery, negotiations, communications, and preparation/participation in multiple mediations.

Additionally, the Court finds the $425.00 fee per hour for Mr. Avshalumov as a managing attorney, and the $250.00 fee per hour for Mr. O'Donnell, to be reasonable. *See Hall v. ProSource Tech., LLC*, 14-CV-2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (noting 6 years ago that "Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates . . . ") (citation omitted); *Kim v. Choi*, 2021 WL 1759830, at *2 (S.D.N.Y. May 4, 2021) (finding that "hourly rates of approximately $150 to $450 – depending on experience – for attorneys working on FLSA litigation are typically approved in this district") (citations omitted).[7] The $75.00 per hour rate for the paralegal work is also reasonable. *See Tarazona v. Rotana Café & Rest. Inc.*, 16-cv-76 (PK), 2017 WL 2788787, at *2 (E.D.N.Y. June 27, 2017) (finding $75.00 per hour billing rate reasonable for a paralegal in FLSA matter). Therefore, based on the total lodestar amount of $14,670, the Court finds the requested attorneys' fees of $17,650 ($1,475 of which is attributed to expenses/costs) to be objectively reasonable.

## IV.  CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs' motion for approval of the settlement agreement be GRANTED, and that Plaintiffs' claims be DISMISSED WITH

---

[6] Based on the Court's independent calculation, Mr. Avshalumov's cumulative hour calculation totals 18.4 rather than 18.1.

[7] Although Mr. Avshalumov is not a partner, he submitted that he is the senior managing attorney and has overseen all litigation at the firm over the last decade. (DE 20-1.)

PREJUDICE. If this Report is adopted, the parties should file a stipulation of dismissal with prejudice within thirty days of the Court's Order.

## V. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiffs. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants via first-class mail and via email and promptly file proof of service on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
April 12, 2022

Respectfully recommended:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge